UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mohamed H. Eldeeb,  Civil No. 04-2932 (PAM/RLE)

Plaintiff,

v.  **MEMORANDUM AND ORDER**

Career Education Corporation, d/b/a
Brown College,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

**A.  Plaintiff's Qualifications and Employment**

Plaintiff Mohamed Eldeeb was born in Egypt in 1943. He moved to Minnesota in 1971 and became a U.S. citizen in 1975. He is sixty-two years old and a practicing Muslim. He has a masters degree in statistics from the University of Cairo and has taken further graduate level courses here in the United States. Plaintiff works with computers and in computer programming. His past employment includes: (1) senior programmer analyst at Target headquarters; (2) programmer analysis systems engineer at EDA Corporation; and (3) database manager for the Minnesota House of Representatives. Before the events giving rise to this action, Plaintiff had never been terminated from employment.

In June 2000, Plaintiff took a job as an instructor at Defendant Career Education Corporation, d/b/a Brown College ("Brown"). He taught courses in computer programming.

In September 2002, Plaintiff began teaching classes in the Business Information Technology ("BIT") four-year degree program. In April 2003, Plaintiff was terminated from his employment. Since his termination, Plaintiff has taught classes part-time at National American University and Inver Hills Community College. (Steinberg Aff. ¶ 2 at 43-45 (Eldeeb Dep.).)

**B.     Plaintiff's Employment at Brown**

In the spring of 2001, Defendant received complaints about Plaintiff's teaching. One of Plaintiff's supervisors, Caleb Bond, testified that a few students complained to him that Plaintiff did not respect students and refused to answer questions. (Wilk Aff. ¶ 3 at 26-27 (Bond Dep.).) Bond testified that he could not remember the names of any of the complaining students, and that "[m]ost all those issues were resolved satisfactorily and with good cooperation from Mohamed." (Id. at 27.)

Plaintiff's annual review in December 2001 reveals that he met expectations in all categories, except that his communication skills were "fair." (Wilk Aff. Ex. A.) The goals for the upcoming school year included improving instructional methods and self-training to teach in the new BIT program. (Id.) Feedback from students was generally satisfactory, but indicated that Plaintiff's presentation and lecture styles were ineffective. (See Steinberg Aff. Ex. F.)

In the fall of 2002, when Plaintiff began teaching BIT courses, Bond testified that three students persistently complained to him about Plaintiff's teaching: (1) Chris LaBounty, (2) Mark Fredricks, and (3) Jason Lanpher. These three students were also instructors at Brown. (Wilk Aff. ¶ 3 at 27.) Defendant contends that LaBounty complained that Plaintiff's lectures were unfocused, unprepared and uninteractive, and that Plaintiff assigned "huge quantities of

2

homework" and then gave extensive tests that weren't relevant to the course work. (Id. at 28.) Fredricks also complained of the same inadequacies on behalf of himself and the other students in the class, as a "de facto spokesman." (Id. at 29-30.) As former assistant department chair and a close friend of Bond, Fredricks kept Bond apprized that students were frustrated with Plaintiff's lectures and his teaching style.

In December 2002, Plaintiff caught Lanpher cheating on an exam. Plaintiff reported this to Defendant's administrators, including Michelle Ernst, the Director of Instruction. (See Wilk Aff. ¶ 5 at 32-34 (Ernst. Dep.); Id. ¶ 3 at 59-60.) Lanpher claimed that Plaintiff was "too aggressive with homework and testing." (Id. ¶ 3 at 60.) Lanpher was removed from the BIT program, but nonetheless kept his teaching job.

On December 13, 2002, Liz Beatty, Assistant Director of Education, observed Plaintiff's lecture. She noted that Plaintiff used extensive diagrams and detailed power point presentations. However, she also noted that he did not engage students and lectured in a monotone voice. She recommended that Plaintiff use voice inflection, step away from the podium, and highlight main key points rather than read from the textbook. (Id. Ex. C.) Plaintiff's student reviews also contained unfavorable comments, particularly regarding his presentation style and classroom demeanor. (Steinberg Aff. Ex. D.)

Plaintiff's 2002 annual performance review was not favorable. (Wilk Aff. Ex. D.) In almost all of the categories, Plaintiff received "unsatisfactory" ratings. The review concluded that there "is a clear lack of organization in classes from grade tracking to lecture planning," and although Plaintiff is generally liked by staff, he "is consistently rated poorly by students

3

in the area of showing respect." (Id.) The review recommended that Plaintiff "needs to drastically improve his preparation for class, lecture planning, lecture delivery, course planning, feedback to students, and job mechanics as they pertain to the academic advisors." (Id.) Plaintiff received this review in January 2003 and disagreed with its conclusions. (Id. ¶ 2 at 57-65.)

In addition to this negative annual review, Plaintiff also received a "Written Warning Memorandum and Performance Improvement Plan" from his supervisors, which placed him on probation for ninety days. (Id. Ex. E.) This memorandum informed Plaintiff that "if your performance is not significantly improved immediately and on a continuing basis, it will lead to the termination of your employment." (Id.) Plaintiff had to improve communications with his students, prepare lectures ahead of time, and stop lecturing by "reading from the textbook." (Id.) Plaintiff also had to meet with one of his supervisors, Mike Jesertiz, every week to discuss Plaintiff's progress and performance. (Id.)

On March 3, 2003, Jesertiz observed Plaintiff's lecture. He opined that Plaintiff "did not seem prepared" for the lecture, failed to interact with his students, and covered "weeks" worth of material in one class period. (Id. Ex. F.) On April 7, 2003, Plaintiff met with supervisors Bond, Jesertiz and Ernst. Jesertiz informed him that he failed to follow the conditions of his performance improvement plan. (Id. ¶ 2 at 38.) Plaintiff was terminated at the April 7 meeting.

Plaintiff vehemently disagrees with the conclusions of his superiors, and contends that he never knew about the unfavorable performance reviews until January 2003. He contends

that his students always gave him favorable evaluations. (Steinberg Aff. ¶ 2 at 47.)  He also contends that he taught the course using power point presentations prepared by the authors of the textbook, designed especially for teaching the material in conjunction with the text book. (Id. at 55.)  Plaintiff submits that he had been at Brown for eight quarters, taught his classes the same way, and "suddenly" these negative reviews surfaced. (Id. at 47.)

Plaintiff claims that he was unlawfully discharged because of his age, and that he was also discriminated against based on his race, color, religion and national origin.  Plaintiff contends that his termination violates the Age Discrimination in Employment Act ("ADEA"), the Minnesota Human Rights Act ("MHRA"), and Title VII.  He seeks lost wages, emotional distress damages, punitive damages, and attorneys' fees and costs.

**DISCUSSION**

**A.    Standard of Review**

Summary judgment is appropriate if no genuine issue of material fact exists, such that the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the evidence in favor of the nonmoving party and give that party the benefit of all justifiable inferences. Id. at 250.  The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party must set forth specific facts sufficient to raise a genuine issue of fact for trial.  Id. at 324.  In employment discrimination cases, the Eighth Circuit has cautioned that summary judgment should be granted sparingly.  Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

**B.      Defendant's Motion**

Plaintiff presents no direct evidence of discrimination. Thus, the Court must analyze Plaintiff's claims under the burden shifting paradigm articulated in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973), which is applied to ADEA, Title VII and MHRA claims. <u>See</u> <u>Britton v. City of Poplar Bluff, Mo.</u>, 224 F.3d 994, 996 (8th Cir. 2004) (applying <u>McDonnell Douglas</u> burden shifting paradigm to Title VII and ADEA claims); <u>Hanenburg v. Principal Mut. Life Ins. Co.</u>, 118 F.3d 570, 574 (8th Cir. 1997) (applying Title VII analysis to MHRA). Plaintiff must demonstrate the elements of a prima facie case: (1) he is within a protected class; (2) he was qualified to perform his job and conformed to his employer's expectations; (3) his employment was terminated; and (4) after his termination, he was replaced by someone outside his protected class. <u>See</u> <u>Hill v. St. Louis Univ.</u>, 123 F.3d 1114, 1119 (8th Cir. 1997); <u>see also</u> <u>Keathley v. Ameritech Corp.</u>, 187 F.3d 915, 919 (8th Cir. 1999). If Plaintiff establishes a prima facie case, then "a rebuttable presumption of discrimination arises and the burden of production shifts" to Defendant to articulate a legitimate, nondiscriminatory reason for termination. <u>Hill</u>, 123 F.3d at 1119. If Defendant successfully articulates this reason, then this presumption evaporates and Plaintiff bears the burden to prove that this proffered reason is a pretext for discrimination. <u>See</u> <u>id.</u> To survive this Motion for Summary Judgment, Plaintiff must not only demonstrate an ability to prove his prima facie case, but he also must set forth sufficient facts from which a reasonable jury could conclude that discrimination was the reason for his termination. <u>See</u> <u>Wilking v. County of Ramsey</u>, 153 F.3d 869, 873 (8th Cir. 1998).

    1.    <u>Prima Facie Case</u>

Defendant contends that Plaintiff cannot prove the second prong of the prima facie case. There is no dispute that Plaintiff has the requisite education and experience to be qualified to teach at Brown. However, the dispute is whether Plaintiff was adequately performing his job at the time of his termination. Defendant's administration received negative complaints about Plaintiff's teaching abilities for over a year. Two different administrators observed Plaintiff's instruction and opined that his classroom demeanor and lecture skills needed improvement. Although he was knowledgeable in the subject matter, he struggled to effectively communicate with his students, as documented by quarterly student reviews. In January 2003, he was placed on probation for a period of ninety days, which informed him that if his performance did not improve, he would lose his job.

Plaintiff contends that he was not aware of his performance deficiencies until January 2003, and that, even then, he complied with the requirements of his ninety-day Performance Improvement Plan. Moreover, he contends that the student reviews for the Spring 2003 quarter indicate that his students were satisfied with Plaintiff's instruction. (Steinberg Aff. Ex. C.) However, the facts also demonstrate that students were not happy with Plaintiff's performance, that Defendant had monitored Plaintiff's instruction practices for some time, and that Plaintiff nevertheless failed to modify his teaching methods. Moreover, the record is devoid of any evidence that any other employee similarly situated to Plaintiff was given more than a ninety day probation period in which to improve or otherwise treated more favorably by Defendant. Thus, although undoubtedly qualified with the requisite education and experience to teach at

Brown, the Court finds that Plaintiff nonetheless failed to satisfy the legitimate expectations of his employer. The Court will not "sit as a super-personnel department" who second-guesses Defendant's business decisions. See Hill, 123 F.3d at 1120. Although Plaintiff subjectively disagrees with Defendant's business decision, he fails to demonstrate that an issue of fact exists as to whether he met his employer's expectations. Because Plaintiff cannot establish a prima facie case, his claims fail.

    2.    Pretext

Assuming, arguendo, that Plaintiff sufficiently establishes a prima facie case, Plaintiff fails to offer sufficient evidence for a reasonable trier of fact to infer discrimination. See Wilking, 153 F.3d at 874. To show pretext, Plaintiff must present evidence that Defendant's articulated reason for Plaintiff's termination was false and that discrimination was the real reason. Id. Defendant has clearly articulated that the reason for Plaintiff's termination was his poor performance. The evidence supports that Plaintiff's classroom demeanor, instruction, and organization were lacking. Even assuming that Defendant's articulated reason is false, Plaintiff offers no evidence whatsoever that would allow a reasonable jury to conclude that Defendant terminated him because of his age, race, religion, or national origin. He does argue that his subsequent success at Inver Hills Community College undermines Defendant's claims that he was underperforming, but such evidence is not probative of discrimination in his employment with Defendant. He also contends that the complaints of the three student-instructors were motivated by a racial animus, in that the student-instructors were white and jealous of his teaching status. However, Plaintiff offers no evidence of such animus on the

part of the student-instructors beyond his conclusory allegations.  Furthermore, none of these student-instructors were similarly situated to Plaintiff nor were they treated more preferentially than Plaintiff.  Finally, Plaintiff insists that he was discriminated against because Defendant refused to discharge Lanpher after he cheated on an exam.  Although the Court recognizes Plaintiff's distress with the prudence of Defendant's decision to retain Lanpher as an employee, Plaintiff nevertheless fails to demonstrate that he and Lanpher were similarly situated.  Accordingly, because Plaintiff fails to submit any evidence of discriminatory animus, Defendant's Motion must be granted.

**CONCLUSION**

The Court finds that Plaintiff fails to demonstrate that a genuine issue of material fact remains for trial.  Accordingly, based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc. No. 20) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: August 30, 2005

> s/ Paul A. Magnuson
> Paul A. Magnuson
> United States District Court Judge